## GUILBERT *v.* KILLINGER.

PATENTS ; INTERFERENCE.

1. Conception and reduction to practice must both be shown beyond a reasonable doubt to establish a claim to priority of invention in the face of a patent already granted.

2. In an interference proceeding between a patentee who stood on the record of the Patent Office showing the issue to him of a patent of November 1, 1892, upon an application filed July 25, 1892, and an applicant whose application was filed September 22, 1894, and who claimed conception and reduction to practice in November, 1891, *held*, affirming the Commissioner of Patents, that an exhibit offered by the applicant to show reduction to practice was at best nothing more than a mere experimental model abandoned or laid aside by its maker and recalled to mind by something arising afterwards, probably the publication or exploitation of his rival's patent.

Patent Appeals. No. 94. Submitted May 11, 1898. Decided June 7, 1898.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Ernest H. Hunter* for the appellant.

*Mr. A. M. Wooster* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

The subject-matter of the interference in this case is an improvement in a "garment-hook," the hook of an ordinary "hook and eye." The improvement relates to a class of self-locking hooks provided with a spring tongue or shank that lies between the lower bars of the hook, and has an elliptical projection or "hump" extending upward and nearly reaching the bill or upper turned-over part of the hook, by which the clasp with the eye is effected. It consists in the formation upon the free end of this shank or

tongue of a laterally-extended shield adapted to abut from the rear against the side bars.    While this shield, projecting underneath the lower bars of the hook, acts as a stop to limit the upward movement of the spring-shank with its hump, a very important part of its action is to prevent the small free end of the shank from sinking in and engaging with and injuring the fabric of the garment.

The appellee, Killinger, stands on the record of the Patent Office, which shows the issue of a patent to him for the improvement in controversy, November 1, 1892, upon an application filed July 25, 1892.

The appellant, Guilbert, whose application was filed September 22, 1894, claims to have conceived the idea of the improvement and reduced it to practice in November, 1891. To establish his claim to priority in the face of the patent to Killinger, he must prove both beyond a reasonable doubt. He must stand or fall upon the weight of his evidence tending to show reduction to practice on November 13, 1891, for if that fails there is nothing tending to show the exercise of any diligence thereafter in perfecting the invention.

Whilst all the tribunals of the Patent Office have concurred in denying priority to Guilbert, they have not agreed upon the grounds of their decisions.    Guilbert offered testimony tending to show that he conceived the invention early in November, and that on November 13, 1891, he made two hooks roughly by hand and showed them to several persons.    They were attached to paper tags bearing indorsements written with ink.

The indorsement upon the most important of the two reads as follows:

"Garment-hook.    Made Nov. 13, 1891, by J. Murray Guilbert.    End of tongue may be headed like a pin.    Witnesses: Theodore Foell, Joseph F. Henry."

They were made exhibits in taking testimony.

In the view that we have taken of this case, we do not deem it necessary to review the evidence offered to show

the genuineness of these exhibits. Conceding that it shows with sufficient certainty the conception of the invention as early as November 13, 1891, we do not regard the construction of that date as a sufficient reduction to practice. It is true that the hook "Exhibit A" nearly approaches the description of the issue. It has the spring-shank with the hump-bend extending between the lower bars, with its lower end bent under one of said bars. If it had the "pin-head" mentioned in the label, it is doubtful if it would act as an effectual stop to the upward movement of the spring-shank or to prevent engagement with the cloth of the garment and injury therefrom.

Comparing the exhibited construction with the details of the issue, in the light of all the surrounding circumstances, we can not regard it as a demonstration of the practical efficacy and utility of the invention. It seems at best nothing more than a mere experimental model abandoned or laid aside by its maker and recalled to mind by something arising afterward, probably the publication or exploitation of his rival's patent.

That Guilbert himself regarded it as not worth farther development may be inferred from his failure even to affix the "pin head," which, according to the indorsement on the tag, was in his mind as a probable improvement. In the course of his direct examination he said:

"A. 44. At the time of making the samples I had not decided just what shape the hook would be made that I would place upon the market, but my recollection is that it seemed to me that the best way to make the article for sale would be to construct the end of the tongue with a pin-head, or a compressed head, which would make it as neat as possible."

It is true that he also said he had subsequently made a sample hook with a "flattened or pin-head." This was not produced, and the evidence as regards it and the date of its construction is vague and unsatisfactory. This was not his only invention. He had obtained patents on others, and

was not entirely ignorant of the law and practice of the Patent Office. This is apparent also in the care which he took to procure and preserve evidence of these exhibits and their date. He was in the service of a manufacturer by the name of Hart, and remained therein until June, 1895. Hart had been interested in his inventions, and advanced money to procure the patents. Among these was a patent for another hook and eve, which was assigned to Hart, who manufactured it and paid him royalty.

The exhibit hook in this case was submitted to Hart, who looked unfavorably upon it, and was unwilling to stand the expense of procuring a patent for it. Guilbert was himself able to pay the necessary charges. The matter rested here until sometime in 1894 and early in 1895, when, according to Guilbert's testimony, he made inquiries with a view to have a machine made for the manufacture of the hook· This was long after Killinger had taken out his patent. Guilbert admitted that he kept himself informed respecting patents for and manufactures of hooks and eyes, having in his possession numbers of copies of patents and samples of manufacture. He admitted that he may have seen the publication of Killinger's patent in the Official Gazette of the Patent Office, but denied that he saw the specification of the same or the patented hook until 1895.

The decision of the Commissioner awarding priority to Killinger will be affirmed, and this decision will be certified to the Commissioner of Patents in the manner required by the law.                                              *Affirmed.*